UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| MICHAEL E. DAUGHERTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.  4:06-CV-128-AS-PRC |
| ) | |
| WABASH CENTER, INC. and ) | |
| JEFFREY DARLING, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| REST ASSURED, LLC, ) | |
| ) | |
| Counterclaimant, ) | |
| ) | |
| v. ) | |
| ) | |
| MICHAEL E. DAUGHERTY, ) | |
| ) | |
| Counterclaim Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss the Counterclaim (Docket No. 38) filed by Plaintiff Michael E. Daugherty, the Motion for Summary Judgment (Docket No. 40) filed by Defendants Wabash Center, Inc. and Jeffrey Darling, and Plaintiff's Motion to Strike (Docket No. 45) certain materials designated by the Defendants in response to the Motion for Summary Judgment.  The parties have fully briefed the issues, and the Court heard oral arguments on these motions in Lafayette, Indiana on June 25, 2008.  For the reasons discussed below, the Plaintiff's Motion to Strike is denied, the Defendants' Motion for Summary Judgment is granted, and the Plaintiff's Motion to Dismiss the Counterclaim is granted.

## I. PROCEDURAL HISTORY

On November 16, 2006, Mr. Daugherty filed an amended complaint alleging that Wabash Center and Mr. Darling terminated his employment with Wabash Center in retaliation for Mr. Daugherty's use of leave under the Family and Medical Leave Act ("FMLA"), and failed to restore Mr. Daugherty to his former position upon return from his medical leave. Mr. Daugherty also alleged state law claims of breach of contract and conversion against Defendants Wabash Center, Mr. Darling, Rest Assured, L.L.C., and Steve McAninch. On February 26, 2007, Rest Assured filed a counterclaim against Mr. Daugherty alleging state claims of tortious breach of business relations and defamation, and included a request for permanent injunctive relief (Docket No. 20). On December 11, 2007, Mr. Daugherty's state law claims (counts II and III of the amended complaint) were dismissed with prejudice by stipulation of the parties (Docket No. 36). Therefore, the claims that remain before this Court are Mr. Daugherty's claims for retaliatory discharge and failure to reinstate under the FMLA (count I of the amended complaint), as asserted against Defendants Wabash Center and Mr. Darling, and Rest Assured's counterclaim against Mr. Daugherty asserting relief only under state law.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party as well as draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986);

*NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The moving party bears the burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment is proper. In this situation, there can be "'no genuine issue of any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

### III.  FACTUAL BACKGROUND

Wabash Center is a not-for-profit agency providing life enhancing services to disabled adults and children. Mr. Daugherty was employed as an at-will employee by Wabash Center in May 1999, until August 9, 2006.[1] In January 2002, Mr. Daugherty became the Director of Information Technology ("IT"). In 2005, Mr. Daugherty was promoted to Vice President of IT, responsible for

---

[1] While employed at Wabash Center, Mr. Daugherty invented a system for remotely monitoring patients using computers and other electronic devices, and Wabash Center contracted to pay Mr. Daugherty a portion of the gross revenues for the invention.

managing and supervising all of the IT staff and maintaining the IT technology. Mr. Daugherty also acted as the Vice President and Chief Information Officer of Rest Assured, L.L.C., a joint venture between ResCare, Inc. and Wabash Center. During his employment, Mr. Daugherty reported to Steve McAninch, Wabash Center's Vice President of Finance, and Mr. McAninch reported directly to Jeffrey Darling, Wabash Center's President.

In March 2006, Mr. Daugherty received an outstanding performance rating, similar to his previous work performance evaluations. Shortly thereafter, in April 2006 through June 19, 2006, Mr. Daugherty engaged in inappropriate e-mail wars with other employees, including Wabash Center's Business Office Manager, Renee Kelley, Director of Human Resources, Wendy Starr, and Assistant Director of Assisted Living Services, Tina Richter. Mr. Darling personally received many of the e-mail exchanges, and admonished Mr. Daugherty on June 12, 2006 for the inappropriate e-mails and poor managerial judgment. In addition, Mr. Darling received complaints from Rest Assured's technical staff about Mr. Daugherty's combative management style, and Mr. Darling provided this information to Mr. McAninch. On June 16, Mr. Darling told Mr. Daugherty about these employee complaints regarding Mr. Daugherty's unprofessionalism. Mr. Daugherty agreed that he had a problem with his management style (as also admitted in his deposition), and sent both Mr. Darling and Mr. McAninch an e-mail on June 16, 2006 suggesting a 'corrective action plan' for his poor performance.[2] On June 19, 2006, Mr. Darling further counseled Mr. Daugherty about his

---

[2]Mr. Daugherty's June 16, 2006 e-mail stated in relevant part: "Here is a rough draft of my plan of correction for myself. I started it a couple nights ago. As I discussed with you earlier and will tomorrow, I have had problems with my style. I am seeking assistance and it WILL improve!!! I am burying the hatchet with Wendy today, I have with Tina, and you WILL see better productivity with me. I will be meeting with the RA [Rest Assured] Team today to start on this as well!!" Mr. Daugherty's e-mail goes on to list his work-related problems, including "Email war with HR" and "Not following correct procedures," and it even provided Mr.

4

inappropriate e-mails, and Mr. Darling and Mr. McAninch provided him with a written warning about his poor management style. While Mr. Daugherty did not think he deserved a written warning, the underlying basis for the warning is not disputed. In addition, Mr. Darling refused to let Mr. Daugherty take his June vacation (which was approved in April) because work matters needed Mr. Daugherty's immediate attention. After receiving his written warning on June 19, Mr. Daugherty went to see a doctor. Mr. Daugherty returned with a doctor's prescription slip noting that he needed "off work two weeks due to medical illness." As a result, Mr. Daugherty was granted leave under the FMLA for eleven days, until July 2, 2006 (but eventually this leave was extended three times).

While Mr. Daugherty was on FMLA leave, Defendants discovered Mr. Daugherty's unauthorized purchases of items to be delivered to his house, made without following appropriate procedures. Specifically, on June 18, 2006, Mr. Daugherty placed an order on Wabash Center's MasterCard for a generator to be delivered to his home, without submitting a written requisition or receiving approval for the purchase— actions that violated explicit and direct instructions provided by Mr. McAninch to Mr. Daugherty on June 11, 2006. Mr. McAninch asked Ms. Starr to investigate other Wabash Center accounts for any other unauthorized purchases, which revealed that Mr. Daugherty had made five other unauthorized purchases, including a purchase made for "Daugherty's Computers" to be delivered to Mr. Daugherty's home address. Mr. Daugherty claims that he had difficulty getting items delivered to Wabash Center so he shipped them to his home, but did not keep the items for his personal use. However, Mr. Daugherty admitted to making purchases without prior approval.

---

Daugherty's resolutions, one of which was to "follow the correct procedures in terms of purchasing . . . [realizing that he] needs to get approval before hand." *See*, Darling Aff., Exb. D; McAninch Aff., Exb. B

5

On June 21 and 22, 2006, Mr. McAninch wrote Mr. Daugherty and requested that Mr. Daugherty meet with him and Mr. Darling upon returning from FMLA leave on July 3, 2006, to discuss the status of his health situation and returning to work.  On June 29, 2006, Wabash Center also wrote Mr. Daugherty to inform him for the first time that he was a "key employee" as defined by the FMLA,[3] and that an extended absence from his duties would cause a significant financial hardship on the company.  Mr. Daugherty does not dispute that he was in fact a "key employee," nor does he present facts showing that his being granted FMLA leave time was affected by the designation; but he asserts that notice of the designation was not properly provided.

On June 30, 2006, while Mr. Daugherty was on FMLA leave, Mr. McAninch discovered that he no longer had computer access to several e-mail files which were 'to' or 'from' Mr. Daugherty.  Mr. McAninch suspected that Mr. Daugherty may have deleted this data since Mr. Daugherty had remote access to Wabash Center's computer system.  In addition, on June 30, Wabash Center experienced problems with its computer system as two of the computer systems crashed.  In response to the computer systems crash, Wabash Center hired outside computer consultants to perform a security audit.  In early July, the computer consultants submitted a report and informed Mr. Darling and Mr. McAninch of the computer systems' security weaknesses, which Defendants attributed to Mr. Daugherty's failure to perform his job responsibilities in the IT department.[4]

At the meeting on July 3, 2006, Mr. Darling and Mr. McAninch presented Mr. Daugherty

---

[3]To be a key employee, the employee's income must be in the top 10% of the company, 29 C.F.R. § 825.217, and the absence of the employee must cause the employer a substantial and grievous loss, 29 C.F.R. § 825.218.

[4]This occurred despite an audit of the Defendants' computer system completed in May 2006, which revealed that the system was in good condition.

with a Plan of Corrective Action and a revised job description, and informed Mr. Daugherty that he would no longer supervise employees of Rest Assured.  Although Mr. Daugherty disagreed with the Defendants' disciplinary response, he again did not dispute his underlying poor performance.  At the end of the meeting, Mr. Daugherty presented another doctor's certificate, stating that he was unable to return to work until his re-evaluation on July 14, 2006.  Before presenting the doctor's note, Mr. Daugherty had not informed Mr. Darling or Mr. McAninch of his need for additional leave.  Mr. Daugherty was given additional leave time as requested, but before Mr. Daugherty left the meeting, Mr. McAninch informed Mr. Daugherty that he was prohibited from accessing Wabash Center's network or computer files while on leave, and requested the company keys and passwords to company computers and other electronic devices.  Mr. Daugherty refused to comply with the request.

On July 14, 2006, Mr. Daugherty faxed a medical certification for another extension of his leave time, and Wabash Center extended his FMLA leave up to and including August 14, 2006.  During his leave, Mr. Daugherty repeatedly refused to provide the requested keys, passwords, files, and other information crucial to Wabash Center's IT department—asserting that doing so would require him to work during his medical leave.  As a result, Defendants hired a computer forensic expert on July 31, 2006, to analyze Mr. Daugherty's Wabash Center computer.  In early August of 2006, the computer forensic expert informed Mr. McAninch that over five thousand files and directories (business data and personal items) were deleted from Mr. Daugherty's hard drive on June 19, 2006— the same day Mr. Daugherty received a written warning and then made his first request for FMLA leave.  Mr. Daugherty claims that it was part of his job responsibilities to delete files and freeup space on the computer system, and that he did not delete files that he was not supposed to delete.

7

Mr. Daugherty was fired in writing on August 9, 2006 by Wabash Center's President, Mr. Darling, who was aware of Mr. Daugherty's engaging in e-mail wars with other employees, failure to follow proper purchasing protocol, refusal to provide passwords, keys and missing files throughout the duration of his leave, and failure to properly secure Wabash Center's computer systems. Defendants state that Mr. Daugherty's termination was due to his poor management style and misconduct demonstrated before June 19, and for Mr. Daugherty's misconduct which occurred or was discovered after June 19. Defendants contend that Mr. Daugherty's termination had nothing to do with his "key employee" designation under the FMLA or his requested leave under the FMLA.

Mr. Daugherty alleges that he was performing to his employer's reasonable expectations, and that Wabash Center and Darling fired him for requesting FMLA leave. Aside from Mr. Daugherty's retaliation claim, he also asserts that he was entitled to reinstatement under the FMLA.

## IV.  DISCUSSION

**A.     MOTION TO STRIKE**

Before addressing the merits of Defendants' Summary Judgment Motion, Mr. Daugherty's Motion to Strike (Docket No. 45) must be considered. Mr. Daugherty seeks to strike portions of the Affidavits of Mr. Darling[5], Mr. McAninch[6], and Ms. Starr[7] arguing that the identified affidavit statements are hearsay, with the exception of paragraph 15 of Mr. McAninch's affidavit (wherein

---

[5] Plaintiff objects to paragraphs 8, 11, 14-16, and 17-22 contained in the Affidavit of Jeffrey Darling (Exb. 6 to Docket No. 41).

[6] Plaintiff objects to paragraphs 6-7, 11, 13, 16, 22, and 30-31 contained in the Affidavit of Steve McAninch (Exb. 5 to Docket No. 41).

[7] Plaintiff objects to paragraphs 3-4 and 7 contained in the Affidavit of Wendy Starr (Exb. 7 to Docket No. 41).

Mr. McAninch testifies to his suspicion that Mr. Daugherty deleted data and blocked access to the computer system), which Mr. Daugherty argues amounts to inadmissable speculation.

During oral argument on the motion, Mr. Daugherty's counsel conceded that the contested statements, with the exception of paragraph 15 of Mr. McAninch's affidavit, are all admissible insofar as the statements are within the personal knowledge of the affiant and are *not* offered to prove the truth of the matter asserted (i.e. whether Mr. Daugherty *actually committed the offenses*). Thus, the parties agree that the affiants' statements are admissible to the extent that they are offered to establish the Defendants' honest beliefs or state of mind when making the decision to terminate Mr. Daugherty's employment.  *See Brill v. Lante Corp*., 119 F.3d 1266, 1271 (7th Cir. 1997).

The Court agrees that the contested statements, including paragraph 15 of Mr. McAninch's affidavit, are admissible and cannot be considered hearsay or speculation as offered to establish the Defendants' honest beliefs or state of mind.  The contested statements that are limited in this manner include the following:  Darling and McAninch's belief that Rest Assured staff found Mr. Daugherty difficult to work with and/or was being negatively influenced by Mr. Daugherty's work style (Darling Aff. ¶ 8; McAninch Aff. ¶ 6), Darling and McAninch's belief that Mr. Daugherty was responsible for Wabash Center's computer system problems (Darling Aff. ¶¶ 17-22; McAninch Aff. ¶¶ 15, 16), and McAninch's belief that, based on information provided by the computer consultants and computer forensic expert hired by Wabash Center, there were weaknesses with the security and back-up of the Wabash Center computer system and many files/directories were deleted from Mr. Daugherty's hard drive on June 19, 2006 (McAninch Aff. ¶ 22, 30, 31; Starr Aff.  ¶ 7).

Furthermore, over objection, the Court accepts as true that on June 16, 2006, Mr. Daugherty acknowledged his poor behavior (arguing and engaging in e-mail wars) and failure to follow correct

9

procedures in purchasing items without approval, and that he offered a 'self correction plan' in an e-mail to Mr. Darling and Mr. McAninch (Darling Aff. ¶ 11; McAninch Aff. ¶ 7). The Court also finds that not only did Defendants believe that Mr. Daugherty failed to submit the proper requisition forms and made unauthorized purchases (Darling Aff. ¶¶ 14-16; McAninch Aff. ¶¶ 11, 13; Starr Aff. ¶¶ 3, 4), but Mr. Daugherty admitted to making some purchases without receiving prior approval (Daugherty Depo., p. 91-95).

As such, the affidavit testimony provided by Mr. Darling, Mr. McAninch, and Ms. Starr is admitted with the specified limitations, and Plaintiff's Motion to Strike (Docket No. 45) is **DENIED**.

**B.     MOTION FOR SUMMARY JUDGMENT**

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et. seq*, entitles any eligible employee suffering from a serious health condition that renders the employee unable to perform the functions of the position to twelve workweeks of leave during each twelve-month period. 29 U.S.C. § 2612(a)(1)(D). After the period of qualified leave expires and the employee returns to work, the employee is entitled to be reinstated to his or her former position or to an equivalent position with the same benefits and terms of employment. 29 U.S.C. § 2614(a). The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any FMLA rights, 29 U.S.C. § 2615(a)(1), and forbids an employer from retaliating against an employee who exercises FMLA rights. 29 U.S.C. § 2615(a)(2) (prohibiting discrimination against an individual who opposes practices made unlawful by the FMLA); 29 U.S.C. § 2615(b) (prohibiting discrimination against persons who participate in or institute FMLA proceedings or inquiries). The FMLA therefore contemplates both theories of recovery advanced here by Mr. Daugherty: discrimination/retaliation, requiring proof of discriminatory or retaliatory intent, and interference/entitlement, requiring only

10

proof that the employer denied the employee his entitlements under the Act. *See Burnett v. LFW, Inc.,* 472 F.3d 471, 477 (7th Cir. 2006); *Kauffman v. Federal Express Corp.,* 426 F.3d 880, 884-85 (7th Cir. 2005).

1. **Discrimination/Retaliation**

A plaintiff can avert summary judgment on an FMLA retaliation claim either by proffering direct or circumstantial evidence of his employer's discriminatory motivation (known as the direct method), or by establishing that after taking FMLA leave he was treated less favorably than other similarly situated employees who did not take FMLA leave, even though he was performing his job in a satisfactory manner (otherwise known as the indirect method). *Lewis v. School Dist. #70,* 523 F.3d 730, 741 (7th Cir. 2008) (citing *Burnett,* 472 F.3d at 481-82). Because Mr. Daugherty has not identified a similarly situated person who did not request FMLA leave and was treated more favorably,[8] he must proceed under the direct method of proof. *See Mitchell v. Dutchmen Manufacturing, Inc.,* 389 F.3d 746, 750 (7th Cir. 2004) (failure to satisfy any one element of the *prima facie* case dooms an employee's retaliation claim).

Under the direct method, Mr. Daugherty must present evidence that his employer took materially adverse action against him—here, termination—on account of his using FMLA leave. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir. 2008) (citing *Burnett*, 472 F.3d at 481). Mr. Daugherty need not prove that retaliation was the *only* reason for his termination, but he may

---

[8]Mr. Daugherty does not attempt to identify a similarly situated unprotected employee treated more favorably than he, and plaintiff's counsel conceded the point during oral argument on June 25, 2008. Further, had such an employee been identified, Mr. Daugherty still cannot establish a *prima facie* of retaliation because the undisputed facts show Mr. Daugherty's unsatisfactory work performance *at the time of* his termination, to which even Mr. Daugherty acknowledged and derived a corrective plan of action for improvement.

11

establish an FMLA retaliation claim by "showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Lewis,* 523 F.3d at 741-42 (citations omitted). "A motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Id.* at 742.

     As mentioned, Mr. Daugherty may use two types of evidence to prove that his employer acted with a discriminatory motivation: direct evidence or circumstantial evidence. *Lewis,* 523 F.3d at 742 (citations omitted); *but see*, *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002) *clarified by Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008) (finding that circumstantial evidence is relevant and probative on any of the elements of a direct case of retaliation) (citing *Sylvester v. SOS Children's Villages of Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006) and *Treadwell v. Office of Ill. Secretary of State*, 455 F.3d 778, 781 (7th Cir. 2006)). Direct evidence is evidence "which (if believed by the trier of fact) will prove the fact in question without reliance upon inference or presumption." *Lewis,* 523 F.3d at 742. Direct evidence generally involves an admission or a statement by the decisionmaker regarding his discriminatory intent. *Id.* Circumstantial evidence "allows the trier of fact to *infer* intentional discrimination by the decisionmaker." *Id.* Direct evidence is not required under the direct method of proof; circumstantial evidence that suggests discrimination, "albeit through a longer chain of inferences," is sufficient. *Id.*

     If the plaintiff's evidence is thereafter contradicted, the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if the defendant lacked a retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation. *Stone*, 281 F.3d at 644; *Burnett*, 472 F.3d at 481.

In this case, Mr. Daugherty argues that he has presented both direct and circumstantial evidence of a discriminatory motive sufficient to avert summary judgment under the direct method of proof. The Court disagrees. Mr. Daugherty fails to identify any admission of retaliatory animus and offers no evidence to suggest that the Defendants viewed FMLA leave time negatively, discouraged taking leave, made it difficult to seek leave, or made disparaging comments. In fact, after refusing to allow Mr. Daugherty to go on his vacation during the busy time, Defendants allowed Mr. Daugherty to take FMLA leave, and even granted him several extensions of leave time as requested, without incident.

The most prominent evidence proffered by Mr. Daugherty is the fact that the Defendants designated Mr. Daugherty as a "key employee" without sufficient notice,[9] and the fact that he was terminated *while* on FMLA leave.

As to being designated a key employee, this designation affected Mr. Daugherty's right to restoration of his job, or put another way, allowed Defendants, under certain circumstances, to deny job restoration to Mr. Daugherty at the time reinstatement was requested. *See* 29 C.F.R. § 825.216. Notably, Mr. Daugherty was not denied restoration, he was terminated. Even so, Mr. Daugherty never contested the fact that he was indeed a key employee; therefore, such a designation was appropriate. Viewing reasonable inferences in Mr. Daugherty's favor, being a key employee necessarily contemplates the fact that Mr. Daugherty's absence would negatively impact the company. However, Defendants concern over Mr. Daugherty's management style and failure to

---

[9]In reality, Mr. Daugherty only argues that his 'key employee' designation supports his retaliation claim under the indirect method of proof; however, for summary judgment purposes the Court also considers whether such evidence supports Mr. Daugherty's claim under the direct method of proof.

13

follow purchase procedures, and even Mr. Daugherty's 'self correction plan', did not concern the amount of time Mr. Daugherty was out of the office or attendance matters. Even after being notified of his key employee status, Defendants never addressed Mr. Daugherty's absences; but, the record demonstrates that Defendants remained concerned about developing a plan to address Mr. Daugherty's performance problems and finding a way to restore and update Wabash Center's computer systems. Mr. Daugherty's key employee designation does not suggest Defendants' intent to discriminate.

As to Mr. Daugherty's contention that the time of his termination is sufficient to establish retaliation, the Court finds that the suspicious timing is not enough here to avoid summary judgment. *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004). While it is true that Mr. Daugherty's termination occurred while he was on FMLA leave, "a temporal sequence analysis is not a magical formula which results in a finding of a discriminatory cause." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004). By itself, temporal proximity would not normally create an issue of material fact as to causation, although it could suffice where the adverse action followed on the heels of the employer's discovery of the employee's disability. *Id.* (citing *King v. Preferred Technical Group*, 166 F.3d 887, 893 (7th Cir. 1999) (reasoning that temporal proximity created an issue of fact where the plaintiff's termination occurred one day after she finished her FMLA leave)).

This is not a case of sudden dissatisfaction with an employee's performance following the exercising of a protected right. While it is true that Defendants were satisfied with Mr. Daugherty's work performance for several years, Mr. Daugherty engaged in undisputed inappropriate conduct in April and June 2006, which resulted in a written warning and Mr. Daugherty's creation of a 'self correction plan'—all *before* Mr. Daugherty requested FMLA leave time. Defendants only

14

discovered Mr. Daugherty's failure to comply with purchasing procedures for particular items and failure to fulfill his IT job responsibilities *while* he was on FMLA leave.  Also, Defendants' request for passwords, keys, and access to needed IT Department information did not require Mr. Daugherty to "work" or fulfill his normal daily duties while on leave.  Mr. Daugherty was already present at the July 3 meeting with Mr. Darling and Mr. McAninch, when after the meeting Mr. Daugherty requested additional leave time and the Defendants requested that Mr. Daugherty provide the IT information.  Mr. Daugherty refused to supply the information.  Yet, he was afforded an extension of his leave.  This insubordination, and Wabash Center's hiring computer experts to assist with the IT Department, again, occurred while Mr. Daugherty was on FMLA leave.  Although Mr. Daugherty has evidence of a close temporal sequence, he lacks evidence supporting an inference of a causal link, and taken as a whole, Mr. Daugherty's evidence does not create an issue of fact, nor a reasonable inference of retaliation.

Even if Mr. Daugherty were able to identify sufficient evidence from which a jury could infer retaliation, the Defendants would be entitled to summary judgment because the record evidence establishes that Mr. Daugherty would have been fired even absent his use of FMLA leave.  *See Cole v. Illinois*, 2008 WL 695369 *10 (C.D.Ill. March 12, 2008).  Mr. Daugherty admitted many of his shortcomings and derived his own 'self correction plan.'  While on medical leave, Mr. Daugherty continually refused to provide information necessary to the proper functioning of Wabash Center's IT Department, which eventually lead to Defendants' discovery of Mr. Daugherty's failure to fulfill his IT job responsibilities.  The unrebutted evidence clearly establishes that Mr. Daugherty would have been terminated even if Defendants had no retaliatory motive, due to Mr. Daugherty's poor management skills, failure to follow proper procedures, and insubordination—all valid

15

nondiscriminatory basis for termination.

### 2. Interference/Entitlement

Mr. Daugherty alleges that Defendants denied his right to be reinstated. The FMLA provides the substantive right that eligible employees are entitled to reinstatement, *see* 29 U.S.C. § 2614(a)(1), however, that right "[s]hall [not] be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave." 29 U.S.C. § 2614(a)(3)(B); *see* 29 C.F.R. §§ 825.216(a), 825.312(d); *see also Kohls v. Beverly Enterprises Wisconsin*, Inc, 259 F.3d 799, 804 (7th Cir. 2001) (*citing Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1017-18 (7th Cir. 2000)).

Accordingly, Mr. Daugherty must establish that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled. *Burnett,* 472 F.3d at 477. The only contested issue is whether Mr. Daugherty has established by a preponderance of the evidence that he is entitled to reinstatement. *Mitchell v. Dutchmen Manufacturing, Inc.,* 389 F.3d 746, 748-49 (7th Cir. 2004) (citing *Kohls v. Beverly Enter. Wis., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001); *but see Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1019 (7th Cir. 2000) (Evans, J., dissenting), *reh'g denied*, 217 F.3d 492, 493 (7th Cir. 2000) (Diane P. Wood, J., dissenting from denial); 29 C.F.R. § 825.216(a)(1) (explaining that an employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment)). An employee who is laid off during the course of his leave has no right to reinstatement. 29 C.F.R. §

825.216(a)(1). However, an employee may not be fired because he took leave, 29 U.S.C. § 2615(a)(2), but may be fired for poor performance when he would have been fired for such performance even absent his leave. *See Phelan v. City of Chicago,* 347 F.3d 679, 683 (7th Cir. 2003) (citing *Kohls*, 259 F.3d at 805).

Mr. Daugherty was aware of his performance problems, admitted areas that he needed to improve in, and even discussed these performance issues with Mr. Darling and Mr. McAninch before Mr. Daugherty ever requested FMLA leave time. Instead of terminating Mr. Daugherty, Defendants gave Mr. Daugherty a written warning, refused to let Mr. Daugherty take vacation time, and allowed Mr. Daugherty to implement strategies for his improvement. Thereafter, Mr. Daugherty took FMLA leave. During this time, Defendants discovered more deficiencies, including Mr. Daugherty's mishandling of additional purchases and his failure to properly maintain Wabash Center's computer systems. At the meeting on July 3rd (before Mr. Daugherty requested his first extension of leave), Defendants did not terminate Mr. Daugherty, but instead presented him with a plan of correction action, and a revised job description placing Mr. Daugherty on a probationary status. Mr. Daugherty then requested another extension, and Defendants granted Mr. Daugherty additional FMLA leave time. This is when Defendants experienced Mr. Daugherty's blatant refusal to provide necessary IT information, which required the hiring of computer experts and led to the discovery of Mr. Daugherty's deletion of thousands of business and personal files. The fact that the leave permitted the employer to discover the problems cannot logically be a bar to the employer's ability to fire the deficient employee. *Kohls*, 259 F.3d at 806. Although Mr. Daugherty may not agree with his being terminated, this Court's role is not to tell employers how to discipline employees; rather, it is to ensure that the process is not discriminatory—here, it was not. *See Kohls*, 259 F.3d at 805. As an

at-will employee, Mr. Daugherty could have been terminated for his inappropriate work behavior while he was at work, or while he was on leave. *See id*.  For this reason, Mr. Daugherty is unable to produce evidence from which a reasonable trier of fact could conclude that he was entitled to be reinstated, or in other words, that Defendants would not have discharged him had he not taken FMLA leave, and summary judgment is appropriate.  *See Kohls*, 259 F.3d 804-05.

**C.    MOTION TO DISMISS THE COUNTERCLAIM**

Counterclaimant, Rest Assured, L.L.C., only remains a party to the litigation on account of its allegations against Mr. Daugherty based on state law to which this Court has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367(a).  Because Mr. Daugherty's federal claims have failed to survive summary judgment, Rest Assured's claims are without a common nucleus of operational facts, and this Court fails see how Rest Assured's state law claims would be more expediously determined in this Court than in some appropriate state court.  Therefore, the Court declines to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); *Bean v. Wisconsin Bell, Inc.*, 366 F.3d 451, 456 (7th Cir. 2004).  Additionally, Rest Assured's undeveloped argument that complete diversity would necessarily exist in a lawsuit between Rest Assured and Mr. Daugherty, does not meet the jurisdictional requirement.  *See Thomas v. Guardsmark, L.L.C.*, 487 F.3d 531, 533-34 (7th Cir. 2007).  As such, Mr. Daugherty's motion to dismiss the counterclaim is granted, and Rest Assured L.L.C.'s counterclaim is dismissed without prejudice.

## V.  CONCLUSION

Viewing the record in the light most favorable to the non-movant,  Mr. Daugherty cannot demonstrate that Defendants would not have terminated him for his conduct absent his FMLA leave. The uncontested facts reveal that Defendants terminated Mr. Daugherty for legitimate reasons,

unrelated to the protections afforded by the FMLA. Having been lawfully terminated, Mr. Daugherty was not entitled to reinstatement.

Mr. Daugherty's retaliation claim fails where he has not established a *prima facie* case of retaliation under the indirect method because no similarly situated unprotected employee was treated more favorably than he. Had he identified such an employee, there is no dispute that Mr. Daugherty was not preforming his job duties satisfactorily at the time of his termination. Under the direct method, Mr. Daugherty has produced insufficient evidence that Defendants terminated him on account of his use of FMLA leave. Had he done so, Defendants presented unrebutted evidence that Mr. Daugherty would have been terminated even if Defendants had no retaliatory motive.

Based on the foregoing, the Court **DENIES** Plaintiff Mr. Daugherty's Motion to Strike (Docket No. 45), **GRANTS** Defendants Wabash Center, Inc. and Jeffrey Darling's Motion for Summary Judgment (Docket No. 40), and DIRECTS the clerk to enter judgment in favor of Defendants Wabash Center, Inc. and Mr. Darling and against Plaintiff Mr. Daugherty on the Amended Complaint. Because the Court asserts no jurisdiction over the remaining purely state law counterclaims made by Rest Assured, L.L.C., Plaintiff Michael E. Daugherty's Motion to Dismiss the Counterclaim (Docket No. 38) is **GRANTED**, and Rest Assured L.L.C.'s counterclaim is **DISMISSED WITHOUT PREJUDICE**. This case is considered closed, with each party to bear its own costs.

**SO ORDERED**.

**DATED:  July 18, 2008**

                /s/ ALLEN SHARP
              **ALLEN SHARP, JUDGE**
              **UNITED STATES DISTRICT COURT**